■ F & F RESTAURANT CORP., Appellant, v WELLS, GOODE & BENEFIT, LTD., et al., Respondents. — Judgment, Supreme Court, New York County (Arnold G. Fraiman, J.), entered on March 8, 1983, affirmed for the reasons stated by Fraiman, J., at Trial Term. Respondents shall recover of appellant $75 costs and disbursements of this appeal. Concur — Kupferman, Bloom and Alexander, JJ.

Murphy, P. J., and Silverman, J., dissent in a memorandum by Silverman, J., as follows: Defendant Neuman's agreement of September 19, 1979 to purchase the premises was expressly subject to the April 10, 1979 lease between the seller Suffolk Industrial Commodities, Inc., and plaintiff's predecessor, tenant Pussycat Lounge, Inc. That lease contained an option to the tenant to extend the lease for a seven-year term from April 1, 1980 to March 31, 1987, to be exercised before December 31, 1979. On October 2, 1979, the tenant Pussycat exercised its option to extend. Clearly that exercise bound defendant purchaser (and his nominee, the codefendant Wells, Goode & Benefit, Ltd.). Suffolk and Pussycat then entered into a lease agreement dated October 29, 1979 changing in material respects that provisions of the April lease. They signed two physical sets of pieces of paper each purporting to be the lease. These two versions of the lease were substantially the same except that one version (exhibit No. 4) contained a rider, paragraph No. 49, which provided that if the contract of sale by the landlord to the defendant was held to be valid, or if the landlord decided to consummate the sale, the October 29 lease should be void and the tenant should have only those rights and obligations set forth in the prior lease dated April 10, 1979. The other version of the October 29 lease (exhibit No. 2) did not contain paragraph No. 49. There was a dispute between Suffolk as seller and defendant Neuman as purchaser with respect to the enforceability of the sales contract. Ultimately defendant Neuman was successful in his specific performance action and title was closed on February 2, 1982 with a conveyance to the purchaser's nominee, defendant Wells, Goode

& Benefit, Ltd. In the meantime, however, the tenant Pussycat in March, 1980 assigned its lease to an intermediate assignee, tenant Margin Call, with Suffolk's consent, and thereafter, again with Suffolk's consent, Margin Call on November 7, 1980 assigned its lease to plaintiff. The assignments referred to the "October 29, 1979" lease as being assigned but did not say which version was being assigned. It is important to distinguish between a physical piece of paper and the complex of legal rights and obligations between landlord and tenant that constitutes the legal relationship of a lease. There can be any number of pieces of paper, but only one complex of legal rights and obligations between a particular landlord and a particular tenant with respect to a particular piece of property. The two pieces of paper signed by the landlord Suffolk and the tenant Pussycat did not nullify each other; they were not inconsistent with each other. The situation is legally the same as if the parties had signed a lease in the form of exhibit No. 2, i.e., without paragraph No. 49 in it, and another piece of paper which contained paragraph No. 49 only. The two would have to be read together to define the complete set of legal relationships. That the paper containing paragraph No. 49 also repeated all the other paragraphs of the lease does not alter the legal situation. When Pussycat assigned its lease to Margin Call and Margin Call assigned to plaintiff, it is clear that the parties intended to assign and the assignee intended to receive and assume the rights and obligations of the tenant under the existing landlord-tenant relationship; they did not intend to assign merely a physical piece of paper. The landlord-tenant relationship thus assigned necessarily included the provision physically expressed in paragraph No. 49 that if the sale by Suffolk was consummated, the tenant's rights would revert to those under the April 10, 1979 lease. The tenant's agreement under paragraph No. 49 was "for itself and on behalf of any future assignee or sublessee". Defendants argue and the trial court has found that after the execution of the contract of sale of September, 1979, defendant proposed purchaser was the equitable owner of the premises, and thus Suffolk had no right to grant a new lease on October 29, 1979 to Pussycat. Pussycat and Suffolk, however, had fully provided for that contingency in paragraph No. 49 by providing that if the sale was consummated, the tenant's rights would revert to those under the April 10, 1979 lease, which defendant purchaser had explicitly recognized and taken subject to. Thus if as appears defendants are unwilling to recognize the October 29, 1979 lease, it does not follow that there is no landlord-tenant relationship; plaintiff is still the tenant, but under the April 10, 1979 lease. This is fair to both parties. The purchaser at the time of entering into the contract expressly recognized that the contract was subject to the April 10, 1979 lease; and plaintiff is willing and anxious to remain as a tenant under that lease. On the other hand, if the defendant owner of the property prefers the October 29, 1979 lease, it could presumably ratify the actions of Suffolk in entering into that lease, and there would be no injustice to plaintiff who took knowingly and intentionally an assignment of that lease. The contrary determination would defeat the reasonable expectations of all parties; would give a windfall to the buyer relieving him from the obligations of a lease which he had expressly recognized, taken subject to and presumably intended to honor; would forfeit rights which the tenant had and carefully sought to preserve. We should not give more weight to formalistic considerations and arguments than to the reasonable expectations of the parties and the interests of justice. An additional objection that defendants make is that the assignments required the consent of the landlord, and that defendants alone were the equitable landlords even though legal title was in Suffolk. However, the April 10, 1979 lease expressly provided that the landlord shall not unreasonably withhold permission to assign the lease; there has been no

suggestion of any basis on which the landlord could withhold such permission in the present case; and the assignments took place during a period when Suffolk was the legal owner — to whom alone the tenant could and did pay rent, and who was responsible to and did perform all duties of the landlord during this period — and it was not at all clear that defendant's contract would ever be enforced by the courts. Accordingly, the judgment dismissing the complaint and determining that the plaintiff has no legal right to occupy the premises should be reversed, on the law and the facts, and judgment entered declaring that plaintiff has the right to occupy the premises under the April 10, 1979 lease, or at the option of the defendant Wells, Goode & Benefit, Ltd., under the October 29, 1979 lease, said option to be exercised in writing within 60 days after determination of this appeal or of any further appeal.